### COMMONWEALTH *vs.* ABBY A. GODDARD.

On the trial of an indictment for obtaining money by falsely pretending that a certain promissory note was genuine and of full value, the government, for the purpose of showing that the defendant was put to desperate expedients to get back this note, called a witness, who testified that the defendant offered his own note, indorsed by another person, in exchange for this note, to the person whom he sought to defraud, who replied that he would inquire into the responsibility of the indorser, and after inquiry told the defendant "that the indorser was not worth a straw." *Held,* that the defendant had a right, on cross-examination, to ask the witness why he told the defendant so.

On a criminal trial, a witness, called by the government to contradict testimony introduced by the defendant, was asked and answered specific questions concerning a conversation which had been testified to by a witness in chief for the government. *Held,* that the defendant had a right, on cross-examination, to ask for the whole of the conversation.

An attorney for a defendant on a criminal charge before a magistrate, who subsequently withdraws from the case, may be required to testify at the subsequent trial to the testimony given by a witness at such examination, although he states that he can only do so by refreshing his recollection by his minutes taken at the examination, which are not full, and that he may not be able to give the testimony with entire accuracy.

INDICTMENT for obtaining money of William R. Huston by false pretences. Trial in the superior court in Norfolk at September term 1859, before *Rockwell,* J., to whose rulings the defendant alleged exceptions, which are sufficiently stated in the opinion.

*J. A. Andrew & W. L. Burt,* for the defendant.

*S. H. Phillips,* (Attorney General,) for the Commonwealth.

MERRICK, J. This is an indictment in which the defendant is charged with having fraudulently obtained from William R. Huston the sum of five hundred dollars by false pretences.

1. Upon the trial it became and was material in support of the indictment that the government should prove that the defendant represented to Huston that the promissory note which she transferred to him in exchange for five hundred dollars in money was made by R. W. Blackwell and indorsed by E. W. Shepard that those parties were persons in good credit for pecuniary responsibility; that the note was of the value of the sum for which it was payable; and also that these representations were untrue, and that the note was in fact entirely worthless. For this and other purposes Huston was produced and examined as

a witness. In addition to other facts stated by him, he testified that upon a certain occasion he went with the defendant from Roxbury to Boston, to the residence or office of Dr. H. F. Gardner; that the defendant there, in accordance with a promise which she had previously made, wrote and signed a promissory note for the sum of five hundred dollars, payable to Dr. Gardner, by whom it was indorsed, and offered it to him in exchange for the note purporting to be signed by Blackwell; that he said to her, after having first made some inquiries concerning his responsibility, that " Dr. Gardner was not worth a straw." Upon cross-examination he was asked why he made this statement to the defendant. The question was objected to, and the court refused to allow the question to be put to the witness.

This ruling we think was erroneous. The evidence given by Huston on his examination in chief was admitted upon the statement of the government, that they would show that the defendant was driven to such extremities and was so conscious of her misconduct in reference to the note purporting to have been made by Blackwell, that she endeavored to get possession of it by the substitution of other worthless paper for it. In that point of view the question was quite material. She denied its truth; and she had a perfect right to show, if she could, by cross-examination of the witness, that it was very improbable, if not indeed impossible, that he should have said any such thing, because there was no reason for asserting that Dr. Gardner was not a person of substantial pecuniary responsibility. It might have been apparent from his explanations, or from his failure to make any, that he had no ground for believing, or cause for asserting, that he was not worth a straw. If such had been the result of the inquiry, pursued as it might have been into much detail, his credit and standing as a witness would have been essentially impaired, and the defendant relieved, in a great degree, if not entirely, from the effect of his testimony. She ought not therefore to have been restrained from proposing the question and insisting upon the answer.

2. After the defendant had introduced all the evidence upon which she proposed to rely, several persons were called and

examined for the purpose of contradicting statements made by witnesses produced on her behalf. Among them was Hawley Folsom. He answered, under objections of the defendant, which were overruled by the court, many different but specific interrogatories, proposed to him concerning a certain conversation, of which Huston had given evidence upon his direct examination. When the government had closed its inquiries, the defendant, in cross-examination, asked the witness to make a statement of all that was said at the interview between Huston, the defendant and himself, of which he had testified. But this mode of examination was objected to, and she was allowed by the court to cross-examine only as to the specific matters of which the witness was inquired of by the government. But certainly no such restriction ought to have been imposed. The inquiry was not, as in the case of *Commonwealth* v. *Savory,* 10 Cush. 595, cited in support of the ruling of the court, in relation to matters remote and collateral, and therefore properly to be limited by the presiding judge in the exercise of his judicial discretion ; but bore directly and immediately upon questions concerning the credibility of witnesses, which were to be considered and determined by the jury. No principle is more familiar than that if one party puts in evidence a part of the admissions or conversations of the other, the latter is entitled to produce, or draw out by cross-examination, testimony concerning all that was said upon the occasion referred to. This is essential to render the part produced in evidence intelligible. The force and effect of particular expressions may be, and often are, greatly modified or affected by the connection in which they are uttered. And for this purpose, and to afford every needful explanation, all that was said at any interview bearing upon the subject of inquiry, of which only detached parts have been given in evidence, may be proved in behalf of those against whom the part only has been produced. If Folsom had stated all that took place or was said in the conversation of which he had testified, it might have appeared that there was no proof or foundation for the supposed contradiction, on which the government desired to rely. The question proposed

to him by the defendant, being material to her defence, should not therefore have been rejected.

3. The defendant called as a witness an attorney and counsellor at law, and proposed to prove by him that in the preliminary examination before the police court Huston's testimony was materially different. The attorney had refused to receive his fees as a witness, and they had been slipped into his pocket. He objected to testifying, because he acted as the defendant's counsel at that examination, (though he had since gone out of the case,) and could only testify by refreshing his recollection from his minutes then taken, which were not full, and were taken under such bias as was natural in counsel; and because he might not be able to state Huston's testimony with accuracy. And the presiding judge overruled the defendant's motion that the witness should be compelled to testify.

This ruling was erroneous. The defendant was entitled to the testimony. The witness was present in court, and his fees as a witness were paid to him, or put into his possession. He stood in no confidential relation to any of the parties, and his knowledge of the facts concerning which it was proposed to inquire of him was obtained in no communication of a confidential character between a counsellor at law and his client. It is not necessary therefore to take into view the rule that such confidential communications are protected from exposure in courts of justice for the sake of the client, and that he may always have the benefit secured to him by the law upon this subject. All that the defendant desired him to testify was what he had heard stated in open court by witnesses there under examination. Of this she had an undoubted right to inquire. No one could interpose any legal objection against it, and he was, like all other persons summoned or called as witnesses before a judicial tribunal, bound to answer. His objections, that his recollection was imperfect, that his minutes of the testimony were not full, and were taken under such circumstances as would bias the mind of counsel, afforded no reason why he should not testify, as far as was in his power, to all the inquiries which should be proposed to him. If such an objec-

tion were allowed to prevail, every person, unwilling to make disclosures, important to be known in the administration of justice, might refuse to submit to the duty and to assume the responsibility of a witness; and thus the rights of parties might be unjustly defeated. The court ought therefore to have compelled the attorney to take the stand and be sworn, and the refusal to yield in this respect to the request of the defendant is good cause of exception.

There are several other questions arising upon the bill of exceptions, but the facts upon which they depend do not appear to be so fully stated as to render them perfectly intelligible to the court. They seem also to be of comparatively minor importance, and we have therefore, as upon other grounds the verdict must be set aside and a new trial granted, thought it advisable not now to consider or make any determination concerning them.					*Exceptions sustained.*